NOT FOR PUBLICATION                    (Docket No. 36)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                           :
CITIZENS FOR A BETTER      :
LAWNSIDE, Inc., et al.,    :
                           :
            Plaintiffs,    :    Civil No. 04-1512 (RBK)
                           :              05-4286
       v.                  :    OPINION
                           :
MARK K. BRYANT, et al.,    :
                           :
            Defendants.    :
_____    :
```

**KUGLER,** United States District Judge:

Before the Court is a motion by Defendants Borough Council of Lawnside, Mark K. Bryant, Juanita Johnson-Clark, Walter Lacey, Stephen Moore, Junious Stanton, Clifford Still, Mary Ann Wardlow, Borough of Lawnside, and the Planning Board of the Borough of Lawnside ("Defendants") for summary judgment with respect to Counts I, II, and V against Plaintiffs Citizens for a Better Lawnside, Inc., Willia Coletrane, Anthony Elzey, Charles Butler, Debra Butler, Wesley Reid and Gloria Reid ("Plaintiffs").  In addition, Defendants move to dismiss all the remaining counts in Plaintiffs Complaint.  For the reasons provided below, Plaintiff's motion is granted in part and denied in part.

## I.   Background

On October 6, 2004, the Mayor and City Council of Lawnside

requested that the Lawnside Planning Board ("LPB") conduct a study to determine if an area known as "Oak Avenue Area" was in need of redevelopment, pursuant to N.J.S.A. 40A:12A-1 et seq., the New Jersey Local Housing and Redevelopment Law ("LHRL"). At its regularly scheduled meeting on December 13, 2004, the LPB authorized Remington & Vernick Engineers, Inc. ("Remington") to conduct a preliminary study to determine if the Oak Avenue Area needed redevelopment, and if so, to create the redevelopment plan.  On April 12, 2005, Remington delivered a two-part document to the LPB.  The first part of the document was the study ("Study"), the second part was the redevelopment plan itself ("Plan").

On May 2, 2005, the Lawnside Borough Council convened a special caucus meeting.  The purpose of the meeting was to present the Study and the Plan to residents living in the redevelopment zone.  On May 9, 2005, the LPB held a public meeting[1] about the Study and Plan.  For the first portion of the meeting, George Stevenson ("Stevenson"), an engineer from Remington, presented Remington's Study to the LPB and the public. (May 5, 2005 Tr. at 48.)  At first, the LPB entertained questions only from the board members, but then the LPB opened the floor to

---

[1]     Defendants deem the May 9, 2005 session a "hearing," whereas Plaintiffs allege the May 9, 2005 was a "meeting."  The Court will refer to this session as a "meeting," but the Court does not decide the legally correct definition of the event at this time.

questions from the public. (Id.)  Various members of the public took the opportunity to ask questions, including Plaintiffs Coltrane, (Id. at 50-52), and Elzey (Id. at 106-08).  After a five minute recess, the LPB moved for an official finding that there was substantial evidence that the Oak Avenue Area was in need of redevelopment.[2]  (Id. at 142-43.)  The LPB seconded the Motion, and after a roll call of the board members, the motion passed.  (Id. at 143-44.)

Stevenson then presented the Plan developed by Remington. (Id. at 144-60.) After Stevenson's presentation of the Plan, the LPB asked him questions.  (Id. at 160-73.)  Then the LPB opened the floor to questions from the public.  (Id. at 173.)  Again, several members of the public took the opportunity to ask questions, including Plaintiff Coletrane. (Id. at 187-89.) After providing board members one more opportunity to ask questions, (Id. at 233), the LPB moved, seconded and passed, by a vote of six to one, a motion to "[A]pprove their report and pass it on to Mayor and Council . . . with the necessary notifications and corrections" discussed at the May 9, 2005 meeting.  (Id.)

---

[2]      The Board initially framed the motion as, "Whether or not there is a need for this Study?"  (May 9, 2005 Tr. at 142.) There was a second to that motion as initially worded, and then Stevenson interjected with the suggestion that the movant reword the motion as "Whether or not there Board finds that there is substantial evidence to suggest that the area would be declared to be in need of redevelopment[?]" (Id. at 142-43.)  The Board moved and seconded the motion as reworded.  (Id. at 143.)

The LPB scheduled a special planning meeting to adopt the resolutions passed for May 26, 2005 (McLeod Aff. at ¶ 7.)  The LPB advertised the meeting in accordance with rules governing "special meetings."  (Id.; see also McLeod Aff. Ex. C.) The LPB did not have a quorum at the May 26 meeting, and rescheduled it for May 31, 2005. (McLeod Aff. at ¶ 8.) The LPB also advertised this meeting as required by the provisions governing "special meetings." (McLeod Aff. Ex. C.)

At the May 31, 2005 meeting, the LPB moved to accept the resolution as written that declared the Oak Avenue Area as needing redevelopment.  (May 31, 2005 Tr. at 24-25.) The LPB then read a second resolution which memorialized the LPB vote from the May 9, 2005 meeting that recommended the Plan to the Lawnside Borough Council. (May 31, 2005 Tr. at 33-35.)  The second resolution contained a change in the language so that the resolution stated, "[LPB] recommends that the Borough Council . . . proceed to adopt the plan . . . for the Oak Avenue redevelopment study area provided that all the language in the plan that refers to uses limited to be revised by the planners to indicate suggested uses for each zone." (Id. at 35.)  The word "suggested" replaced the word "preferred."  (Id. at 4-10.) After reading the second resolution into the record, the LPB opened the floor to questions from the Board, (Id. at 35-36), and then to public comment.  (Id. at 37). During this time, Plaintiffs

4

Coltrane and Elzey spoke, as well as other members of the public. (Id. at 37-44, 52-59, 101-13.) The LPB then moved to accept the resolution with the amended language, and it passed by a vote of five to one. (Id. at 35-36.)

On June 14, 2005, Citizens for a Better Lawnside ("CFBL") filed a Complaint in lieu of Prerogative Writ in Superior Court, Camden County.[3]

On June 15, 2005, Remington and Morris G. Smith ("Smith"), Economic Development Counsel, explained the redevelopment process and the Plan at a Borough Council meeting. (June 15, 2005 Tr. at 77.) After asking questions, the Council adopted a resolution, with amendments,[4] that designated the Oak Avenue Area as needing redevelopment by a vote of six to zero. (Id. at 77-81.) Then the Council moved to entertain an ordinance that introduced the Plan for Oak Avenue, with the same amendments.[5] (Id. at 81.) This motion also carried by a vote of six to zero. (Id. at 81-82.) After additional, routine administrative votes, the Borough Council took public comments. (Id. at 90.) The Council limited speakers to two minutes per person, due to the size of the

---

[3]    CFBL withdrew the Complaint on August 30, 2005, prior to litigation of any of the issues.

[4]    The Borough Council exempted residential properties along Charleston Avenue from the Plan. (Id. at 78.)

[5]    See note 4, supra.

audience at the meeting.  (Id. at 91.) The first speaker was Allen Etish, then counsel for Plaintiff CFBL. (Id. at 91-102.) Plaintiffs Gloria Reid, Coletrane, Elzey, Wesley Reid, and Debra Butler also spoke.  (Id. at 120-76.) The Board stated that the June 15 meeting was only to introduce the ordinance, not to approve it, and that the public hearing on the ordinance would take place on July 6, 2005, at which time law required that the Council take public comment on the matter.  (Id. at 174-76.)

On July 6, 2005, the Borough Council held a public hearing on the Study and Plan.  Stevenson and Remington presented the Study and Plan.  (Id. at 22-46.) Then the Council opened the meeting to public comment on the ordinance. (Id. at 46.)  Again, the Council limited each speaker to two minutes.  (Id.) Etish, members of CFBL, and several individually named plaintiffs spoke. (Id. at 52-173.) The Council moved to close public comment, which carried by a vote of six to zero.  (Id. at 194-95.)  The Council then moved to adopt the ordinance to implement the Plan, which also carried by a vote of six to zero.  (Id. at 195-96.)

Plaintiffs filed this Complaint in United States District Court, District of New Jersey, on September 1, 2005, and requested a preliminary injunction.  The Court denied the request for a preliminary injunction at a hearing on September 9, 2005. On January 10, 2006, Plaintiffs filed the First Amended Verified Complaint.  On February 10, 2006, Plaintiffs filed the Second

Amended Complaint ("SAC").  In the SAC, Plaintiffs allege that
Defendants violated the First, Fourth, Fifth[6] and Fourteenth
Amendments to the United States Constitution, and Plaintiffs
pursue this action under 42 U.S.C. § 1983.[7]  Plaintiffs also
allege that New Jersey's Local Redevelopment and Housing Law,
N.J.S.A. § 40A:12A-1, et seq., ("LHRL") violates the Fifth and
Fourteenth Amendments to the United States Constitution.  In
addition, Plaintiffs allege that Defendants violated the
following New Jersey statutes: 1) various provisions of the LHRL;
2) the New Jersey Open Public Meetings Act, N.J.S.A. § 10:4-6, et
seq. ("OPMA"); and 3)the New Jersey Civil Rights Act, N.J.S.A.
10:6-2.[8]

Plaintiffs seek a declaratory judgment that Defendant LPB
acted improperly and unlawfully; that the May 31, 2005, meeting

---

[6]     Plaintiffs allege that Defendants violated the Fifth
Amendment guarantee to substantive and procedural due process.
However, the Fifth Amendment applies only to action of the
federal government, and is therefore not applicable to the action
of a municipal government body.  Malloy v. Hogan, 378 U.S. 1, 26
(1964).  Therefore, the Court grants Defendants' motion to
dismiss Plaintiffs' Fifth Amendment claims without further
discussion.

[7]     Plaintiffs plead 42 U.S.C. §§ 1983 and 1985 as separate
causes of action.  However, these sections are merely vehicles
for plaintiffs to bring suit against defendants, who, under the
color of state law, allegedly violate the Constitution and laws
of the United States.

[8]     Plaintiffs plead N.J.S.A. § 10:6-2 as a separate cause
of action.  However, this section is the state law equivalent of
42 U.S.C. § 1983.  See note 7, supra.

did not comply with the state and federal constitutions and state law; and that the Resolutions adopting the Study and Plan on May 31, 2005 are invalid.  The Plaintiffs also seek to permanently enjoin implementation of the Plan, as well as attorneys' fees and costs.

Defendants filed this motion on March 30, 2006.  In this motion, Defendants request summary judgment on Plaintiffs' First and Fourteenth Amendment claims.  Defendants further move for dismissal of Plaintiffs' remaining claims.

## II. Discussion

### A. Summary Judgment

#### 1. Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential

8

element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003).

2.   First Amendment Analysis

a.   Restriction of Public Commentary

Plaintiffs allege that Defendants violated the First and Fourteenth Amendments when the Defendants restricted Plaintiffs' discussion of the Plan and Study at the various meetings.   In Eichenlaub v. Township of Indiana, the Third Circuit held that the defendant, the chairman of a meeting of the Township Board of Supervisors, acted constitutionally when he cut short the

comments of the plaintiff during the citizen's forum portion of a

township Board of Supervisors' meeting. 385 F.3d 274, 281 (3d

2004).  The plaintiff in Eichenlaub was repetitive and

belligerent with his comments, and the court stated that

> Restricting such behavior is the sort of time, place, and
> manner regulation that passes muster under the most
> stringent scrutiny for a public forum. Indeed, for the
> presiding officer of a public meeting to allow a speaker
> to try to hijack the proceedings, or to filibuster them,
> would impinge on the First Amendment rights of other
> would-be participants.

Id.  The court elaborated that as long as the restrictions are

viewpoint neutral, they are constitutionally permissible.  Id.;

see also Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d

2006) ("It is clearly established that when a public official

excludes a . . . citizen from a public meeting, she must conform

her conduct to the requirements of the First Amendment. . . .

[V]iewpoint-based restrictions violate the First Amendment

regardless of whether they also serve some valid time, place,

manner interest.") This accords with the holdings of other

Circuit Courts of Appeals.  See, e.g., Kindt v. Santa Monica Rent

Control Bd., 67 F.3d 266, 270 (9th Cir. 1995) ("The Board

regulations restricting public commentary to three minutes per

item at the end of each meeting are the kind of reasonable time,

place, and manner restrictions that preserve a board's legitimate

interest in conducting efficient, orderly meetings."); Jones v.

Heyman, 888 F.2d 1328, 1331 (11th Cir.1989) (holding that the

defendant mayor's silencing and removal of a citizen from a meeting was constitutional).

In this case, plaintiffs allege that their speech was restricted because Defendants did not provide an "adequate" period of time to discuss the Study and the Plan. A close reading of the record demonstrates otherwise. Plaintiffs cite portions of the various meeting transcripts in their brief opposing summary judgment, but those citations show that the LPB and the Borough Council provided ample opportunity for the plaintiffs, and all members of the public, to speak at the various meetings. Although it is true that members of the LPB and the Borough Council interrupted members of the public during their presentations, the record demonstrates that these interruptions were to keep the speakers on point, or otherwise within the parameters set at the beginning of the meetings, such as restricting the amount of time individuals could speak, and asking the public to address only the governing body and not other members of the audience. For example, the transcript from the May 5, 2005 meeting reflects that a Board member interrupted a speaker, Mr. Waller, when Mr. Waller asked about the Plan during the portion of the meeting dedicated specifically to discussion of the Study and the Oak Avenue Area's need for redevelopment. (May 5, 2005 Tr. at 61-62.) The Board member stated that he wanted to stay on topic during the first part of

11

the meeting.  (<u>Id.</u>)

Plaintiffs further allege that Defendants singled out and silenced only those individuals who oppose the Study and Plan. If true, such conduct would amount to an unconstitutional viewpoint restriction.  However, the record does not support such a finding.  Rather, the LPB and the Borough Council took great care to ensure that everyone had an opportunity to speak, and almost always concluded public portions of these meetings by asking if anyone else had anything to say.

In short, although Plaintiffs may not feel that the Defendants gave them "adequate" time to discuss the Study and Plan, inadequate time to publicly deliberate and discuss does not amount to a First Amendment violation. The parameters the LPB and Borough Council set forth for these meetings were constitutional time, place and manner restrictions akin to those established in <u>Eichenlaub</u> and <u>Kindt</u>.  Without such parameters, these meetings could have devolved into chaotic disorder that would have precluded everyone from having an opportunity to speak.

Therefore, with regard to Plaintiffs' claims of First and Fourteenth Amendment violations in connection with their ability to speak freely at the meetings, the court grants Defendants' motion for summary judgment.

> b.   *Retaliation*

Plaintiffs also allege that one Defendant, Clifford Still,

conducted an "unauthorized investigation" into the personal business of one of the individuals, Reverend Rose Powell, who spoke against the Study and Plan at the June 15, 2005 meeting with the intent to quell political opposition and to suppress Plaintiffs' political speech.[9]

As an initial matter, the Court must determine if the Plaintiffs have standing, since Reverend Powell is not a named plaintiff in this litigation.  For a case to be justiciable in federal court, the plaintiffs must show that they "suffered an injury-in-fact-an invasion of a legally protected interest which is (a) concrete and particularized, (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 558 (1992) (internal quotations and citations omitted).

---

[9]     In their brief opposing summary judgment and supporting affidavits, Plaintiffs' discuss an incident where Defendants allegedly "verbally berated" a female speaker, Heather Bambrilla, at the June 15, 205 Borough Council meeting.  Plaintiffs failed to allege this incident in their SAC.  Because Plaintiffs did not sufficiently plead this component of their First Amendment retaliation claim, the Court will not address it.

At issue is whether the named plaintiffs suffered an injury-in-fact.[10]  The plaintiffs sufficiently pled, and offered sworn affidavits to support the allegation, that they were <u>personally</u> intimidated by the "investigation" Defendant Still conducted of Reverend Powell after she spoke against the Study and Plan at the June 15 meeting. (SAC ¶¶ 49, 51; Pls.' Br. Opp'n Summ. J. Exs. 16, 17, 20, 22, 23) (emphasis added).

With the issue of standing resolved, the Court must decide whether there is a genuine issue of material fact as to whether Plaintiffs can maintain a claim for retaliation in violation of the First Amendment.  Such a claim requires that a plaintiff demonstrate: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d 2006).

The conduct at issue is without question protected.  The right to speak openly about government action lies at the heart of the First Amendment.  <u>United Mine Workers of Am. v. Illinois State Bar Ass'n</u>, 389 U.S. 217, 222 (1967).  The Court also finds that a reasonable jury could determine that Defendants' actions

---

[10]     There is no question that the Plaintiffs established the causation and redressability prongs of the standing requirement.

would deter a person of ordinary firmness from exercising their constitutional rights, and that there was a causal connection between Defendants' actions and Plaintiffs' suppression of speech.

Therefore, with regard to Plaintiffs' First Amendment retaliation claim, the Court denies Defendants' motion for summary judgment.

### 3.   Procedural Due Process Analysis

Plaintiffs allege that Defendants violated their Fourteenth Amendment guarantee to procedural due process when Defendants allegedly failed to comply with portions of the LHRL,[11] restricted Plaintiffs' ability to speak at the various meetings,[12] and that Defendants engaged in an "unlawful taking" because Defendants' actions resulted in diminution of Plaintiffs' property value.  The only issue properly alleged as a procedural due process violation is the allegation of "unlawful taking."

The Fifth Amendment proscribes the taking of private property for public use without just compensation. See U.S.

---

[11]   Failure to comply with the LHRL is not a per se violation of the Fourteenth Amendment's guarantee of procedural due process.  Analysis of the state law claim will follow, infra, but will not be discussed further with regard to the federal constitutional claims.

[12]   Defendants' alleged suppression of Plaintiffs' speech is discussed under the First Amendment claims, supra, and has no place in a discussion of Plaintiffs' procedural due process claims.

CONST. amend. V. "It is well-recognized that this prohibition applies to state and local governments under the Fourteenth Amendment." Cowell v. Palmer Twp., 263 F.3d 286, 290 (3d Cir. 2001) (citing Chicago, Burlington & Quincy R.R. Co. v. City of Chicago, 166 U.S. 226, 239 (1897)). In Williamson County Regional Planning Commission v. Hamilton Bank, the United States Supreme Court held that the state need not pay "just compensation" prior to a taking. 473 U.S. 172, 194 (1985). If a state has a procedure whereby aggrieved property owners can petition for just compensation, there can be no violation of the Takings Clause under the Fifth and Fourteenth Amendments. Id. Therefore, "[i]t follows that 'if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Fourteenth Amendment's guarantee of procedural due process] until [the property owner] has used the procedure and been denied just compensation.'" Cowell, 263 F.3d at 290 (citing Williamson County Reg'l Auth., 473 U.S. at 195)).

As Defendants' adeptly demonstrate in their Brief in support of summary judgment, the Borough of Lawnside has yet to initiate eminent domain procedures. Therefore, logically, Plaintiffs' claim of an "unlawful taking" is premature and not ripe for adjudication. Normally, this Court will refuse to exercise jurisdiction over a case that is not ripe because it is not a live "case or controversy" as required by Article III of the

16

United States Constitution. However, there is an additional component to Plaintiffs' Fourteenth Amendment Procedural Due Process claim.

With regard to Plaintiffs' claims that the diminution in their property values constitutes an unlawful taking, it is settled law that decreased property value will never, by itself, constitute an unconstitutional taking.  See, e.g., Concrete Pipe and Prod. of California v. Const. Laborers Trust for S. California, 508 U.S. 602, 645 (1993); Penn Cent. Transp. Co. V. City of New York, 438 U.S. 104, 131 (1978).

Therefore, the Court finds that Plaintiffs failed to create a genuine issue of material fact with regard to whether Defendants' actions constitute a Fourteenth Amendment Procedural Due Process violation.  Accordingly, the Court grants Defendants' motion for summary judgment on this count.

4.   Substantive Due Process

Although alluded to in the SAC, Plaintiffs do not specifically allege that Defendants violated their Fourteenth Amendment Right to Substantive Due Process.  Federal Rule of Civil Procedure 8(a)(2) requires the Plaintiff to include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Because Plaintiffs failed to allege that Defendants violated Plaintiffs' substantive due process rights under the Fourteenth Amendment,

17

this Court dismisses that portion of their SAC.

### B.   Motion to Dismiss

#### 1.   Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations along with all reasonable inferences that may be drawn from them as true.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)).  The Court may dismiss the Complaint only if Plaintiffs can prove no set of facts that would entitle them to relief. Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).

#### 2.   Constitutionality of LHRL

Plaintiffs allege that LHRL, in its entirety, violates the Fourteenth Amendment to the United States Constitution.  First, the Court notes the paradoxical nature of this allegation, given that Plaintiffs allege violations of the LHRL in their SAC, but also allege that the statute it itself unconstitutional.  In addition, Plaintiffs allege that § 40A:12A-8(h) violates the Fourth and Fourteenth Amendments to the United States Constitution because it permits an unreasonable search.

Federal Rule of Civil Procedure 5.1, effective December 1, 2006, requires a party who challenges the constitutionality of a

state statute to promptly "file a notice of constitutional question stating the question and identifying the paper that raises it" if "neither the state, nor any of its agencies, officers, or employees is a party."  FED. R. CIV. P. 5.1 (formerly L. Civ. R. 24.1(b)).  In addition, Rule 5.1 requires the moving party in such an action to serve notice on the state Attorney General.  Pursuant to 28 U.S.C. § 2403, the Court must also certify to the state Attorney General that there is a constitutional challenge to a state statute. Id.

Although this Court certified the Plaintiffs' challenge to N.J.S.A. § 40A:12A-8(h) to the Attorney General of New Jersey on September 9, 2005, this was before Plaintiffs filed the SAC on February 28, 2006.  Moreover, the certification includes Plaintiffs' challenge only to N.J.S.A. § 40A:12A-8(h).  The SAC adds a challenge to the LHRL in its entirety.

Pursuant to Federal Rule of Civil Procedure 5.1, Plaintiffs failed to file written notice of their federal constitutional challenge to the LHRL with this Court, and likewise failed to serve the notice on the New Jersey Attorney General.  As a result, this Court dismisses without prejudice Plaintiff's federal constitutional challenge to the LHRL.

        3.   Violations of LHRL and OPMA

Plaintiffs allege that Defendants violated various portions of the LHRL, including N.J.S.A. § 40A:12A-6, which sets forth the

19

procedures by which a municipality may deem an area as a
redevelopment area, including the requirement of a public
hearing; N.J.S.A. § 40A:12A-7(a)(3), which requires a
redevelopment plan to include an outline for temporary and
permanent relocation of residents in the affected area; and
N.J.S.A. § 40A:12A-7(d), which requires a redevelopment plan to
be substantially consistent with the municipal master plan.
Moreover, Plaintiffs allege that the Defendants violated the
OPMA.

The Court finds that Plaintiffs' SAC, on its face, alleges
sufficient facts that, if true, would entitle Plaintiffs to the
relief they seek for the Defendants' alleged violations of the
LHRL and OPMA.  Moreover, this Court retains jurisdiction over
these state law claims pursuant to 28 U.S.C. § 1367(a) because
the Court denies Defendants' motion for summary judgment on
Plaintiffs' First Amendment retaliation claim.  Therefore,
Defendants' motion to dismiss the counts related to Defendants'
alleged violations of various portions of LHRL and OPMA is
denied.

## III. CONCLUSION

For the foregoing reasons, the Court grants Defendants'
motion for summary judgment with regard to Plaintiffs' First and
Fourteenth Amendment claims alleging direct suppression of speech
and Plaintiffs' Fourteenth Amendment claims alleging violation of

20

Procedural Due Process.

The Court denies Defendants' motion for summary judgment with regard to Plaintiffs' First and Fourteenth Amendment claims of First Amendment retaliation.

The Court grants Defendants' motion to dismiss Plaintiffs' Fifth Amendment claims.

The Court denies Defendants' motion to dismiss Plaintiffs' claims regarding Defendants' alleged violations of the LHRL and OPMA.

The Court dismisses without prejudice Plaintiffs' challenges to the federal constitutional validity of the LHRL.

The Court dismisses Plaintiffs' claims that Defendants violated Plaintiffs' substantive due process under the Fourteenth Amendment because Plaintiffs did not adequately plead those counts in accordance with Federal Rule of Civil Procedure 8(a)(2).


Dated: 12/22/06            s/Robert B. Kugler
                          ROBERT B. KUGLER
                          United States District Judge