NOT FOR PUBLICATION (Docket No. 46)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| CITIZENS FOR A BETTER LAWNSIDE, Inc., et al., | |
| Plaintiffs, | Civil No. 05-4286 (RBK) |
| v. | **OPINION** |
| MARK K. BRYANT, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

Before the Court is a motion by Defendants Borough Council of Lawnside, Mark K. Bryant, Juanita Johnson-Clark, Walter Lacey, Stephen Moore, Junious Stanton, Clifford Still, Mary Ann Wardlow, Borough of Lawnside, and the Planning Board of the Borough of Lawnside ("Defendants") for partial reconsideration, pursuant to Local Rule 7.1(i), of this Court's Order of December 22, 2006 denying summary judgment with respect to Plaintiffs' First Amendment retaliation claims and the corresponding retention of Plaintiffs' state law claims. Plaintiffs Citizens for a Better Lawnside, Inc., Willia Coletrane, Anthony Elzey, Charles Butler, Debra Butler, Wesley Reid and Gloria Reid ("Plaintiffs") oppose this motion. In addition, Defendants move to dismiss all the remaining counts in Plaintiffs Complaint. For the reasons

provided below, Defendants' motion for reconsideration is denied.

## I. Background

On October 6, 2004, the Mayor and City Council of Lawnside requested that the Lawnside Planning Board ("LPB") conduct a study to determine if an area known as "Oak Avenue Area" was in need of redevelopment, pursuant to N.J.S.A. 40A:12A-1 et seq., the New Jersey Local Housing and Redevelopment Law ("LHRL"). At its regularly scheduled meeting on December 13, 2004, the LPB authorized Remington & Vernick Engineers, Inc. ("Remington") to conduct a preliminary study to determine if the Oak Avenue Area needed redevelopment, and if so, to create the redevelopment plan. On April 12, 2005, Remington delivered a two-part document to the LPB. The first part of the document was the study ("Study"), the second part was the redevelopment plan itself ("Plan").

On May 2, 2005, the Lawnside Borough Council convened a special caucus meeting. The purpose of the meeting was to present the Study and the Plan to residents living in the redevelopment zone. On May 9, 2005, the LPB held a public meeting[1] about the Study and Plan. For the first portion of the meeting, George Stevenson ("Stevenson"), an engineer from

[1] Defendants deem the May 9, 2005 session a "hearing," whereas Plaintiffs allege the May 9, 2005 was a "meeting." The Court will refer to this session as a "meeting," but the Court does not decide the legally correct definition of the event at this time.

Remington, presented Remington's Study to the LPB and the public. (May 5, 2005 Tr. at 48.) At first, the LPB entertained questions only from the board members, but then the LPB opened the floor to questions from the public. (Id.) Various members of the public took the opportunity to ask questions, including Plaintiffs Coltrane, (Id. at 50-52), and Elzey (Id. at 106-08). After a five minute recess, the LPB moved for an official finding that there was substantial evidence that the Oak Avenue Area was in need of redevelopment. (Id. at 142-43.) The LPB seconded the Motion, and after a roll call of the board members, the motion passed. (Id. at 143-44.)

Stevenson then presented the Plan developed by Remington. (Id. at 144-60.) After Stevenson's presentation of the Plan, the LPB asked him questions. (Id. at 160-73.) Then the LPB opened the floor to questions from the public. (Id. at 173.) Again, several members of the public took the opportunity to ask questions, including Plaintiff Coletrane. (Id. at 187-89.) After providing board members one more opportunity to ask questions, (Id. at 233), the LPB moved, seconded and passed, by a vote of six to one, a motion to "[A]pprove their report and pass it on to Mayor and Council . . . with the necessary notifications and corrections" discussed at the May 9, 2005 meeting. (Id.)

The LPB scheduled a special planning meeting to adopt the resolutions passed for May 26, 2005 (McLeod Aff. at ¶ 7.) The

LPB advertised the meeting in accordance with rules governing "special meetings." (Id.; see also McLeod Aff. Ex. C.) The LPB did not have a quorum at the May 26 meeting, and rescheduled it for May 31, 2005. (McLeod Aff. at ¶ 8.) The LPB also advertised this meeting as required by the provisions governing "special meetings." (McLeod Aff. Ex. C.)

At the May 31, 2005 meeting, the LPB moved to accept the resolution as written that declared the Oak Avenue Area as needing redevelopment. (May 31, 2005 Tr. at 24-25.) The LPB then read a second resolution which memorialized the LPB vote from the May 9, 2005 meeting that recommended the Plan to the Lawnside Borough Council. (May 31, 2005 Tr. at 33-35.) The second resolution contained a change in the language so that the resolution stated, "[LPB] recommends that the Borough Council . . . proceed to adopt the plan . . . for the Oak Avenue redevelopment study area provided that all the language in the plan that refers to uses limited to be revised by the planners to indicate suggested uses for each zone." (Id. at 35.) The word "suggested" replaced the word "preferred." (Id. at 4-10.) After reading the second resolution into the record, the LPB opened the floor to questions from the Board, (Id. at 35-36), and then to public comment. (Id. at 37). During this time, Plaintiffs Coltrane and Elzey spoke, as well as other members of the public. (Id. at 37-44, 52-59, 101-13.) The LPB then moved to accept the

resolution with the amended language, and it passed by a vote of five to one. (Id. at 35-36.)

On June 14, 2005, Citizens for a Better Lawnside ("CFBL") filed a Complaint in lieu of Prerogative Writ in Superior Court, Camden County.[2]

On June 15, 2005, Remington and Morris G. Smith ("Smith"), Economic Development Counsel, explained the redevelopment process and the Plan at a Borough Council meeting. (June 15, 2005 Tr. at 77.) After asking questions, the Council adopted a resolution, with amendments,[3] that designated the Oak Avenue Area as needing redevelopment by a vote of six to zero. (Id. at 77-81.) Then the Council moved to entertain an ordinance that introduced the Plan for Oak Avenue, with the same amendments.[4] (Id. at 81.) This motion also carried by a vote of six to zero. (Id. at 81-82.) After additional, routine administrative votes, the Borough Council took public comments. (Id. at 90.) The Council limited speakers to two minutes per person, due to the size of the audience at the meeting. (Id. at 91.) The first speaker was Allen Etish, then counsel for Plaintiff CFBL. (Id. at 91-102.)

---

[2] CFBL withdrew the Complaint on August 30, 2005, prior to litigation of any of the issues.

[3] The Borough Council exempted residential properties along Charleston Avenue from the Plan. (Id. at 78.)

[4] See note 3, supra.

Plaintiffs Gloria Reid, Coletrane, Elzey, Wesley Reid, and Debra Butler also spoke. (Id. at 120-76.) The Board stated that the June 15 meeting was only to introduce the ordinance, not to approve it, and that the public hearing on the ordinance would take place on July 6, 2005, at which time law required that the Council take public comment on the matter. (Id. at 174-76.)

On July 6, 2005, the Borough Council held a public hearing on the Study and Plan. Stevenson and Remington presented the Study and Plan. (Id. at 22-46.) Then the Council opened the meeting to public comment on the ordinance. (Id. at 46.) Again, the Council limited each speaker to two minutes. (Id.) Etish, members of CFBL, and several individually named plaintiffs spoke. (Id. at 52-173.) The Council moved to close public comment, which carried by a vote of six to zero. (Id. at 194-95.) The Council then moved to adopt the ordinance to implement the Plan, which also carried by a vote of six to zero. (Id. at 195-96.)

Plaintiffs filed this Complaint in United States District Court, District of New Jersey, on September 1, 2005, and requested a preliminary injunction. The Court denied the request for a preliminary injunction at a hearing on September 9, 2005. On January 10, 2006, Plaintiffs filed the First Amended Verified Complaint. On February 10, 2006, Plaintiffs filed the Second Amended Complaint ("SAC"). In the SAC, Plaintiffs allege that Defendants violated the First, Fourth, Fifth and Fourteenth

Amendments to the United States Constitution, and Plaintiffs pursue this action under 42 U.S.C. § 1983. Plaintiffs also allege that New Jersey's Local Redevelopment and Housing Law, N.J.S.A. § 40A:12A-1, et seq., ("LHRL") violates the Fifth and Fourteenth Amendments to the United States Constitution. In addition, Plaintiffs allege that Defendants violated the following New Jersey statutes: 1) various provisions of the LHRL; 2) the New Jersey Open Public Meetings Act, N.J.S.A. § 10:4-6, et seq. ("OPMA"); and 3)the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

Plaintiffs seek a declaratory judgment that Defendant LPB acted improperly and unlawfully; that the May 31, 2005, meeting did not comply with the state and federal constitutions and state law; and that the Resolutions adopting the Study and Plan on May 31, 2005 are invalid. The Plaintiffs also seek to permanently enjoin implementation of the Plan, as well as attorneys' fees and costs.

Defendants filed a motion for summary judgment as to Plaintiffs' First and Fourteenth Amendment claims on March 30, 2006. Defendants further moved for dismissal of Plaintiffs' remaining claims. On December 22, 2006, this Court entered an Order granting in part and denying in part Defendants' summary judgment motion. On January 10, 2007, Defendants moved for reconsideration of this Court's denial of summary judgment as to

Plaintiffs' First Amendment retaliation claim.

## II. Discussion

### A. Standard of Review

#### 1. Reconsideration

Local Civil Rule 7.1(i) permits a court to reconsider a prior decision upon a showing that the court overlooked dispositive factual matters. See Bryan v. Shah, 351 F. Supp. 2d 295, 297 (D.N.J. 2005); Bowers v. Nat'l Collegiate Athletic Assoc., 130 F.Supp.2d 610, 612 (D.N.J. 2001). Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision. See Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992); Carteret Sav. Bank, F.A. v. Shushan, 721 F. Supp. 705, 709 (D.N.J. 1989). A court may grant a motion under Rule 7.1(i) only if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." Database Am., Inc. v. Bellsouth Advert. & Publ'g Corp., 825 F.Supp. 1216, 1220 (D.N.J.1 993); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Reconsideration is "an extraordinary remedy," and a court should grant it "very sparingly." See NL Indus. Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J. 1996); Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986). "[M]ere

disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for reargument." Yurecko v. Port Auth. Trans. Hudson Corp., 279 F. Supp. 2d 606, 609 (D.N.J. 2003).

2. Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so,

the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003).

**B. First Amendment Retaliation**

Plaintiffs allege that one Defendant, Clifford Still, conducted an "unauthorized investigation" into the personal business of one of the individuals, Reverend Rose Powell, who spoke against the Study and Plan at the June 15, 2005 meeting with the intent to quell political opposition and to suppress Plaintiffs' political speech.

1. De Minimis Violation

Defendants argue that, as a matter of law, Defendant Still's inquiry into Reverend Powell's background does not constitute First Amendment retaliation because it is de minimis. Defendants cite cases from other jurisdictions to support their argument, including Eaton v. Meneley, 379 F.3d 949 (10th Cir. 2004) (reversing the district court's determination that the defendant law enforcement official's single action of running a background

check on plaintiffs engaged in a political recall of defendant would have chilled the speech of a person of ordinary firmness engaged in political debate); Suarez Corp. Ind. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000) (holding that "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory); and Colson v. Graham, 174 F.3d 498, 512 (5th Cir. 1999) (holding that where the plaintiff alleged only that she was the victim of criticism, an investigation . . . , and false accusations which may chill speech but are not actionable as First Amendment retaliation).

The Third Circuit has little binding precedent on this issue. However the Third Circuit used language in previous opinions which leads this Court to believe that the threshold to establish a First Amendment retaliation claim is low. Notably, in O'Connor v. City of Newark, the Third Circuit stated

> First Amendment retaliation claims are always individually actionable, even when relatively minor. Even "an act of retaliation as trivial as failing to hold a birthday party for a public employee," if "intended to punish her for exercising her free speech rights," may be actionable if under the circumstances it would be sufficient to "deter a person of ordinary firmness" from exercising his or her First Amendment rights. A First Amendment retaliation claim will lie for any individual act which meets this "deterrence threshold," and that threshold is very low: . . . a cause of action is supplied by all but truly de minimis violations.

O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Suppan v. Dadonna, 203 F.3d 228, 234-35 (3d Cir. 2000).

Moreover, this Court distinguishes the non-binding authority cited by Defendants in support of their de minimis argument. With regard to Eaton, the defendant law enforcement official ran a background check on the plaintiff in that matter. There were no threats or coercive tactics beyond the background check. This is unlike the incident involving Reverend Powell and Defendant Still, as there is the potential for coercive behavior on the part of Defendants, especially with regard to whether Reverend Powell spoke on behalf of a religiously-affiliated organization, which if tax-exempt, cannot engage in political advocacy. Likewise, this case is distinguishable from Suarez, as it is unclear whether there was coercive behavior or intimidation. Finally, Colson is inapposite because in that case, the Fifth Circuit limited its holding to instances where the Plaintiff was the victim of false accusations.

Therefore, the Court finds that it did not overlook facts or misinterpret the law when it denied Defendants' motion for summary judgment as to Plaintiffs First Amendment retaliation claims. For this reason, the Court denies Defendants' motion for reconsideration as to this issue.

2. Objective Standard

Defendants argue that Defendant Still's inquiries regarding

Reverend Powell did not actually deter Plaintiffs' speech. Defendants cite transcripts from the July 6, 2005 meeting, at which all the named Plaintiffs spoke. Because Plaintiffs who spoke at the July 6 meeting knew of Defendant Still's alleged retaliation at that meeting, Defendants argue that Defendant Still's inquiries did not deter or suppress Plaintiffs' speech.

As the Court stated in its December 22, 2006, Opinion, elements of a retaliation claim under § 1983 require plaintiffs to show "(1) that they engaged in a protected activity under [the] First Amendment[;] (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights[;] and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (emphasis added). With regard to the second prong of the analysis, the effect of the retaliatory action, courts use an objective, rather than subjective standard.[5]

Defendants argue that because Defendant Still's inquiries

[5] This objective standard is also articulated in Eaton v. Meneley, 379 F.3d 949 (10th Cir. 2004), upon which Defendants rely heavily in arguing their point regarding a de minimis violation. With regard to the second prong of the retaliation analysis, the Eaton court stated "when the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective." Id. (citing Smith v. Plati, 258 F.3d 1167, 1176-77 (10th Cir. 2001). "The harm must be of the type that would chill a person of ordinary firmness from continuing to engage in the protected speech." Id.

did not actually deter Plaintiffs from speaking out, there is no genuine issue of material fact as to whether Defendants' conduct constitutes a claim of First Amendment retaliation. However, because courts use an objective standard, Defendants' argument misstates the law. The accurate inquiry is whether Defendant Still's inquiry would deter a person of ordinary firmness from exercising his or her First Amendment rights, not whether Defendant Still's inquiry actually deterred Plaintiffs from speaking. This is a question of fact, which is not an appropriate determination for this Court to make on a summary judgment motion. Therefore, the Court neither incorrectly stated the law in its December 22, 2006 Opinion, nor did the Court overlook evidence. As a result, the Court denies Defendants' motion for reconsideration on this issue.

3. Hearsay

Finally, Defendants argue that in denying their motion for summary judgment on the First Amendment retaliation claim, this Court relied on hearsay evidence that is ultimately inadmissible. Specifically, Defendants refer to statements in Reverend Powell's Affidavit, dated August 30, 2005, in which she recalls a telephone conversation with the President of the Ministerial Council. During that conversation, the President of the Ministerial Council informed Reverend Powell that Defendant Still contacted the President to inquire about Reverend Powell's

"background, including [her] ordination, [her] licenses, [her] pastorate and the legal standing of [her] church." Defendants argue that this is hearsay, as Reverend Powell asserts what the President of the Council told her over the telephone. Defendants further argue this is not within Reverend Powell's "personal knowledge," and is therefore outside the scope of appropriate evidence for this Court to consider on a motion for summary judgment under Federal Rule of Civil Procedure 56(e).

The Court respectfully disagrees with Defendants' argument. As a threshold matter, this information is within Reverend Powell's personal knowledge, as she was a party to the conversation. Therefore, it is appropriate for her to describe her understanding of the conversation in her affidavit. Moreover, this evidence is not hearsay as contained in the affidavit, because Plaintiffs do not offer the out-of-court statement for its truth, but rather for its effect on the listener (i.e., evidence that Reverend Powell knew of the retaliation on the part of Defendant Still).[6]

Therefore, the Court properly relied on the information in

---

[6] Even if the Plaintiffs offer the statement for its truth, the Plaintiffs could produce the declarant, in this case the President of the Ministerial Council, at trial to testify about this alleged conversation with Defendant Still. See King v. City of Philadelphia, 66 F. App'x 300, 304 (3d Cir. 2003) (citing Williams v. Borough of West Chester, 891 F.2d 458, 466 n.12 (3d Cir. 1989) ("[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony.")).

Reverend Powell's affidavit in denying Defendants' motion for summary judgment as to the First Amendment retaliation claim. As a result, the Court denies Defendants' motion for reconsideration.

**III. CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion for reconsideration of its December 22, 2006 Order denying Defendants' motion for summary judgment. Moreover, this Court retains jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the Court denied summary judgment as to the First Amendment retaliation claim.

Dated: 5/24/2007

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge