NOT FOR PUBLICATION                                                          (Docket Nos. 56, 58)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CITIZENS FOR A BETTER  
LAWNSIDE, Inc., et al.,  

        Plaintiffs,     :     Civil No. 04-1512 (RBK)

        v.              :     **OPINION**

MARK K. BRYANT, et al.,  

        Defendants.

**KUGLER**, United States District Judge:

    Before the Court are partial motions for summary judgment by Defendants Borough Council of Lawnside, Mark K. Bryant, Juanita Johnson-Clark, Walter Lacey, Stephen Moore, Junious Stanton, Clifford Still, Mary Ann Wardlow, Borough of Lawnside, and the Planning Board of the Borough of Lawnside ("Defendants") with respect to the Third Amended Complaint filed by Plaintiffs Citizens for a Better Lawnside, Inc. ("CFBL"), Willia Coletrane, Anthony Elzey, Charles Butler, Debra Butler, Wesley Reid and Gloria Reid ("Plaintiffs"). For the reasons that follow, Defendants' motions will be granted in part and denied in part.

**I.    BACKGROUND**

    The Court has set forth the background of this case in previous opinions and so will not recite the lengthy factual and procedural history again. Citizens for a Better Lawnside, Inc. v.

Bryant, Civ. No. 05-4286, 2006 WL 3825145 (D.N.J. Dec. 22, 2006); Citizens for a Better Lawnside, Inc. v. Bryant, Civ. No. 05-4286, 2007 WL 1557479 (D.N.J. May 24, 2007). Plaintiffs filed a Third Amended Complaint ("TAC") on February 14, 2007. The TAC asserts several new federal claims, including claims for First Amendment retaliation based on events that occurred at a Lawnside Borough Council meeting and events that occurred after the filing of this case. The first of these new claims is based upon an interaction between a member of the public and Lawnside Borough Council member Walter Lacey at a public council meeting on June 15, 2005 (the "Bambrilla claim"). The TAC alleges that Councilmember Lacey "publicly retaliate[d], humiliate[d] and severely berate[d] Heather Bambrilla, who, during a period of public comment, was attempting to speak out against" the proposed Oak Avenue Redevelopment plan ("the plan"). (TAC ¶ 38.) The TAC also reasserts Plaintiffs' claim, included in previous iterations of the complaint, that employees of the Lawnside Borough denied them access to purported publicly available copies of Borough Council meetings in retaliation for filing this lawsuit (the "CD claim"). (TAC ¶¶ 42-44.) The TAC also includes a retaliation claim based on a notice of code violations sent to CFBL member Alice Woods concerning a political sign on her property (the "banner claim"). (TAC ¶¶ 45-50.) Additionally, the TAC reasserts Plaintiffs' state law claims based on the New Jersey Local Redevelopment and Housing Law ("LHRL") and the Open Public Meetings Act ("OPMA"). (TAC ¶¶20-34, 54-55.)

II.     STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

#### A. First Amendment Claims

A claim for retaliation in violation of the First Amendment requires a plaintiff to demonstrate: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v.

Independence Twp., 463 F.3d 285, 296 (3d 2006).

1.     Bambrilla Claim

As an initial matter, the Court notes that Plaintiffs have standing to bring this claim even though Ms. Bambrilla is not a named plaintiff in this case, because they have provided affidavits supporting their allegation that they were personally affected and intimidated by Councilmember Lacey's treatment of Ms. Bambrilla  (see, e.g., TAC Ex. I ¶¶ 3-4, K¶¶ 4-5, L ¶¶ 3-4), and so they have shown an adequate injury-in-fact.  See Citizens for a Better Lawnside, 2006 WL 3825145, at *5.  In the prior summary judgment opinion, the Court noted that Plaintiffs had not alleged the Bambrilla claim in their Second Amended Complaint.  Plaintiffs did include the Bambrilla claim in the TAC, and so it is now properly before the Court.

Though the threshold in this Circuit for establishing a First Amendment retaliation claim is low, see O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006), the Court concludes that Plaintiffs have not met this threshold here.  The facts, as established by the transcript of the June 15, 2006 meeting, show that Ms. Bambrilla spoke during the public comment portion of a Lawnside Council meeting.  Councilmember Lacey responded to Ms. Bambrilla.  The response by the councilmember appears in its entirety in the footnote.[1]  This was

---

[1] "I appreciate your comments, ma'am, but to be [quite] honest, for member of council who have made every effort to inform, to put out notices, to put information on—[inaudible response from Ms. Bambrilla].  Excuse me, ma'am.  A couple things.  I understand that you're concerned but you come across as condescending.  You're in Cherry Hill and this is Lawnside.  Now, you have not been at every meeting that we've had.  In addition to the requirements of state law, we've given additional meetings that we've had here with the citizens to discuss this issue.  So for you to come here and act as if you're coming from some mountain to tell us how we need to govern in Lawnside, I resent that.

"The other point, ma'am, that you based your assumption on is that we don't want the support of our citizens and the residents.  We do.  We've made every effort, a reasonable effort, to get that support.  We have informed them.  We had informal meetings and we've had formal

the extent of the interaction between Ms. Bambrilla and the Lawnside Borough Council.

This action is can be referred to as a "double First Amendment" claim–where the plaintiff asserts her right to be free from retaliation for protected speech, but "at the same time, the defendant's alleged wrongful activity may be entitled to the very *same* protections because that activity also takes the form of speech." Jeffrey Brian Greenstein, The First Amendment v. The First Amendment: The Dilemma of Inherently Competing Rights in Free Speech-Based Constitutional Torts, UMKC L. Rev., Fall 2002, at 27, 32. Though the Third Circuit has established standards for other types of retaliation cases, there is no clear rule governing such "double First Amendment" claims. See, e.g., McLaughlin v. Watson, 271 F.3d 566, 573-74 (3d Cir. 2001) (discussing standard where public official urges third party to retaliate against plaintiff); R.C. Maxwell Co. v. Borough of New Hope, 735 F.2d 85, 88 (3d Cir. 1984) (same); Suppan v. Dadonna, 203 F.3d 228, 234-34 (3d Cir. 2000) (discussing standard where public employees allege job-related retaliation); McKee v. Hart, 436 F.3d 165, 169-70 (3d Cir. 2006) (same).

---

meetings that conform with the land use law. So at this–and we're continuing to make sure based on all the letters we got, that every one of us got, we will make sure that this process is transparent."

"And another point I think needs to be brought out, is that a lot of what has been put out in the media, and even throughout the citizens, [...] some that are here this evening, has been misinformation. We have made every attempt this evening to correct [...] that misinformation. Residents have approached me at church, called me [at] home, hit me on the street, and they have basically talked about things that they heard in the street. One resident stood up this evening and talked about what they heard from the media. People have to come to meetings. They have to basically participate in the process. All right? It's very important that they participate in the process. Constantly, every time I go anywhere, I beg people to come out to council meetings, come out to council meetings. That's the only way you make us accountable. And the only time the people choose to come out and make us accountable is when they think it's a big issue. It's the only time we get a big room tonight. It has to be part of the process, but it has to be a lifestyle." (June 15, 2005 Tr., Defs.' First Mot. Summ. J. Ex. I at 131-34.)

5

The Court concludes that the interaction at issue here did not constitute retaliation in violation of the First Amendment.  The central commitment of the First Amendment is to ensure that public debate remain "uninhibited, robust, and wide-open."  New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964).  The Court disagrees with Plaintiffs' characterization that Ms. Bambrilla was "berated" by Councilmember Lacey.  The statement was not coercive or threatening, implicitly or explicitly, against Ms. Bambrilla or anyone who spoke out against the redevelopment plan.  A review of Council member Lacey's response makes clear that it was not actionable retaliation, but rather speech in the nature of civic dialogue.  Cf. X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 68-71 (2nd Cir. 1999) (discussing public officials' freedom of expression to criticize recipient of government contract); Bond v. Floyd, 385 U.S. 116, 135-36 (1966) (finding restriction of First Amendment rights where public official was sanctioned for criticism of government policies, noting "[t]he interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators").  Such speech would be normal and expected at a public meeting such as this, where local officials and concerned citizens were discussing and debating issues of local importance.

The exchange between Ms. Bambrilla and Councilmember Lacey can be contrasted with the "investigation" Defendant Councilmember Still conducted into the background of Reverend Rose Powell, an action that this Court considered in previous opinions.  See Citizens for a Better Lawnside, 2006 WL 3825145, *5-6.  This Court has already ruled that a reasonable jury could find that Defendants' actions in that incident would deter a person of ordinary firmness from exercising her constitutional rights and that there was a causal connection between Plaintiffs' actions and Defendants' suppression of speech.  Id.  In that incident, later action was taken

against Reverend Powell allegedly in retaliation for her speech at a council meeting. In this incident, Council member Lacey responded to Ms. Bambrilla's speech at a council meeting with speech of his own. The Court finds the two situations to be readily distinguishable in terms of their "potential for coercive behavior on the part of Defendants". See Citizens for a Better Lawnside, 2007 WL 1557479, at *5; 2007 WL 1557479, at *4-6.

The Court will grant summary judgment on this claim without adopting Defendants' argument that a public official defendant's conduct must be of a "particularly virulent" character to give rise to a claim for First Amendment retaliation. That standard has been applied in a situation where a defendant public official was alleged to have urged a third party (plaintiffs' employer) to take adverse action against the plaintiffs. McLaughlin, 271 F.3d at 573-74. Here, the retaliatory conduct at issue is not mediated by the involvement of any third party but directly poses the "double First Amendment" problem. The Court therefore expresses no opinion on the applicability of the "particularly virulent" standard to this case. See also R.C. Maxwell Co., 735 F.2d at 88-89.

Because Council member Lacey's response did not constitute actionable retaliation, the Court grants Defendants summary judgment on the Bambrilla claim.

2.     CD Claim

Defendants also seek summary judgment on Plaintiffs' claim of First Amendment retaliation for failure to turn over CDs with the recordings of the council meetings. The Court finds that there are genuine issues of material fact that make granting summary judgment on this claim impossible.

The record reflects that Plaintiffs were informed at the May 31, 2005 Planning Board

meeting that recorded copies and written transcripts of that meeting as well as prior Planning Board and Council meetings would be available for purchase. Councilmember Stanton told the attendees at the meeting: "Now, please be advised that our ordinances require citizens to purchase [the recordings and transcripts]. So there are three CDs available that you can listen to, and there's also a hard copy of the transcript." (Defs.' First Mot. Summ. J. Ex. H at 31.) Plaintiffs filed the federal complaint in this case on September 1, 2005. Plaintiffs requested recorded copies of the meetings on November 4, 2005, and those requests were denied "due to litigation." (Pls.' Opp'n to Defs.' First Mot for Summ. J. Ex. 17, 18, 51, 52.) The Deputy Borough Clerk, who processed the request, noted on the request forms "Per Calvin Fisher, Planning Bd. Solicitor no meeting tapes are to be issued due to litigation." (TAC, Ex. B.) Transcripts of the meetings were eventually turned over to Plaintiffs' counsel in discovery.

       The Court must evaluate the requirements for a First Amendment retaliation claim. Plaintiffs meet the first element because they engaged in protected speech by filing this lawsuit. As to the second element, a reasonable jury could find that this denial of previously promised information would deter a person of ordinary firmness from exercising her constitutional rights, especially when the denial is admittedly based on the protected conduct–Plaintiffs were told that the denial was "due to litigation." Based on these facts, a reasonable jury could find a causal link between the constitutionally protected conduct and the retaliatory action.

       Defendants argue that the requests for the CDs were denied because a New Jersey court rule requires challenges to municipal actions to be accompanied by a transcript of relevant meetings, transcribed by a certified transcriber from the original recording of the meetings. (Defs.' Mot. Summ. J. at 2, Defs.' Reply at 2.) Defendants miss the point. The issue is not

whether a certified transcript was required for litigation, or whether the CDs would have been admissible in court, or whether counsel could have obtained copies eventually through the discovery process.  The issue is whether Plaintiffs were denied access to the CDs when they requested them and whether that denial was in retaliation for filing this lawsuit.  Transcription, admissibility, and discovery issues, while potentially relevant to the litigation, are irrelevant to determining whether a reasonable jury could find that Defendants' refusal to provide the copies to Plaintiffs constituted retaliatory conduct.

Plaintiffs have provided sworn testimony and exhibits that the recordings were not provided "due to litigation" (Opp'n to First Mot. Summ. J. Ex. 17, 18, 51, 52) and that they sought them independently and not at the direction of counsel in an attempt to circumvent discovery rules (Coltrane Dep. 166:12-24 Mar. 30,. 2007, Mot. Summ. J. Ex. I.)  The record contains a Lawnside Borough ordinance that provides that if "documents requested...relate to pending litigation, prospective litigation or personnel matters, said documents shall not be considered public records for the purposes of this chapter and shall not be provided under any circumstance to any requesting party."  (Lawnside Ordinance §29-6, Opp'n Ex. A.)  However, a decision on the applicability of this ordinance is to be made in "the sole determination of the Borough Administrator" (id.), and there is no indication that Defendants relied on this ordinance to deny Plaintiffs the recordings.  An issue of material fact exists regarding whether "due to litigation" meant "because of the Lawnside ordinance governing public records when there is pending litigation" or "because you personally filed a lawsuit."  The Court cannot resolve these issues of fact.  Summary judgment on this count is denied.

3.     Banner Claim

The banner claim was added in the TAC and, like the CD claim, is based on facts that occurred after the initial filing of this case. Alice Wood is a resident of Cherry Hill who owns and operates a business in Lawnside, and she is a member of CFBL. (Wood Aff. ¶¶ 1-2, TAC Ex. U.) At some point in the month of June, 2006, Ms. Wood constructed a large banner out of a blue tarp and lettering purchased at Home Depot and hung the banner from the porch of her business at 15 Emlen Avenue in Lawnside. (Wood Dep. 96:17-97-8, Mar. 30, 2007, Mot. Summ. J. Ex. H.) The banner read "Lawnside Needs new Leadership. 20 Years is Enough." (Wood Dep. 99:18-20, Mar. 30, 2007.) On June 29, 2006, Borough employee Thomas El responded to a complaint he had received about the sign by sending Ms. Wood a letter. (Opp'n Ex. H.) The letter advised Ms. Wood:

> After a recent survey of your property at 15 Emlen Avenue, Lawnside, NJ, I found that you are in violation of the Borough of Lawnside's Code, Chapter 96, that pertains to "Land Development" in the Borough of Lawnside.
> We will allow five (5) days to correct the violation that is listed below. Failure to comply with this citation will result in receiving a summons and a court appearance will be a mandatary [sic]. Also, you will be subject to the fines that are listed in the "Land Development."
>         VIOLATIONS:    96-18-Violations and Penalties
>                                   96-72-2- No Display or Announcement of Card or Sign[2]

Ms. Wood complied with the letter and took down the sign within five days, and she was not cited or summoned to court. (Wood Dep. 102:21-103:6, Mar. 30, 2007.) Plaintiffs claim that the letter was sent in retaliation for filing this suit and the speech on the banner expressing opposition to current Lawnside political leadership. (TAC ¶ 50.)

---

[2]The parties seem to agree that the code section cited was in fact incorrect and did not apply to Ms. Wood's property. The record is not clear on whether Ms. Wood was in violation of any Borough ordinance.

Ms. Wood is not a named plaintiff in this case, and the Court must determine if Plaintiffs have standing to bring this claim.  CFBL cannot raise this claim on its own behalf, as it has not alleged that the organization itself suffered injury from Defendants' actions towards Ms. Wood, and even if the pleadings are read so liberally as to create such an allegation, CFBL has not provided any evidence showing that it was itself harmed.  Therefore, Plaintiffs will have standing to pursue this claim only if CFBL can pursue it as a representative on Ms. Wood's behalf.  An organization has representational standing to bring a claim on behalf of its members if (1) the organization's members would have standing to sue on their own, (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested require individual participation by its members.  Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 342-43 (1977); Pub. Int. Research v. Powell Duffryn Terminals, 913 F.2d 64, 70 (3d Cir. 1990), cert. denied, 498 U.S. 1109 (1991).

The first part of the Hunt test is met, because Ms. Wood would have standing to pursue this claim on her own.  She has provided a sworn affidavit indicating that she was intimidated and feared speaking out against Defendants as a result of this incident, adequately alleging injury-in-fact.  This injury is traceable to the actions of Defendants, and the injury would be redressed by a favorable decision from the Court.  See Interfaith Cmty. Org. v. Honeywell Intern., Inc., 399 F.3d 248, 256-58 (3d Cir. 2005).

To meet the second part of the Hunt test, the interest CFBL seeks to vindicate must be germane to its purpose.  Defendant does not challenge CFBL on this issue.  The evidence shows that CFBL is a group composed of residents and business owners in Lawnside organized for the social welfare and common good of the residents of the borough, including educating the public

and policymakers concerning the best possible redevelopment of Lawnside. (Certificate of Incorporation, Citizens for a Better Lawnside, First Mot. Summ. J. Ex. 9.) The Court concludes that the second part of the test is met.

The final part of the Hunt test mandates that neither the claim asserted nor the relief requested require individual participation by the organization's members. The Third Circuit has indicated that this does not constitute a ban on individual participation; a claim requiring limited but not substantial individual participation will pass the test. Pa. Psychiatric Soc. v. Green Spring Health, 280 F.3d 278, 283 (3d Cir. 2002) (citing Hosp. Council v. City of Pittsburgh, 949 F.2d 83, 86 (3d Cir. 1991). Here, some participation by Ms. Wood may be required, but this participation will be limited because the facts regarding her participation are largely undisputed, and a First Amendment retaliation claim is analyzed under an objective standard.

CFBL therefore has representative standing to bring the banner claim. However, CFBL cannot seek monetary damages on this claim. When a group has only organizational standing, and not standing in its own right, it can only assert damage claims on behalf of its members if such claims would be common to the members. Here, where only Ms. Wood was allegedly injured, any damage claims would be particular to her and not to the general CFBL membership. Cf. Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 406-07 (3d Cir. 2005) (holding entity seeking relief under the ADA on its own behalf and not just on behalf of its members could also damages for itself). The Court will permit CFBL to bring this claim as an action for declaratory relief; the TAC asked for all possible forms of relief on this claim, including "any other such relief as the Court deems just and equitable," and the Court finds an action for a declaratory judgment to be an appropriate way of vindicating the First Amendment

interest at stake here.

Plaintiffs have established a genuine issue of material fact on the banner claim. The Court views the facts, including the deposition testimony of Mr. El and the other Borough employees in conjunction with the banner claim, in the light most favorable to Plaintiffs, as required at this stage of the litigation.[3] Ms. Wood's actions in participating in CFBL and hanging the banner at her business clearly constitute protected speech. A reasonable jury could find that receipt of a warning letter such as this would deter a person of ordinary firmness from exercising her First Amendment rights. Though an ordinance requiring a permit or restricting the size or placement of a political message could certainly constitute a valid time, place, and manner restriction, viewpoint-based enforcement of such an ordinance would violate the First Amendment. See Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006) ("viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest"). Additionally, Plaintiffs have provided evidence creating genuine issues of fact as to the causal connection between Ms. Wood's speech and the letter sent by Mr. El. Mr. El stated at his deposition that he was following up on an anonymous complaint, as reported to him by his assistant, and that it is his ordinary practice to not issue a citation if many people are in violation of an ordinance because of the difficulties in citing all violators. (El Dep. 38: 3-13 Mar. 30, 2007, Mot. Summ. J. Ex. J.) He stated that after he sent the warning letter to Ms. Wood, he decided not to issue a citation to her, because then he would have to issue a citation to other individuals subject to the same violations as well. (El Dep. 39:2-8 Mar. 30,

---

[3]The Court does not consider the allegations relating to any previous letters sent to Ms. Wood or any other purported actions by the Borough against her prior to the banner incident, only the evidence actually relating to the letter concerning the banner.

2007.) Viewing the facts in the light most favorable to the Plaintiffs, there are issues of fact as to who submitted the anonymous complaint and whether other individuals were issued warning letters. These issues are relevant to the existence causal connection between the speech expressed on the banner and the allegedly retaliatory action. Summary judgment on this claim is denied.

**B.    Fourteenth Amendment Claims**

Defendants argue that Plaintiffs have impermissibly re-pleaded substantive due process claims under the Fourteenth Amendment in the TAC, after similar claims were dismissed or decided on summary judgment in the Court's prior opinion. See Citizens for a Better Lawnside, 2006 WL 3825145, at *7. To the extent that Plaintiffs believe they have re-plead any substantive due process claims in the TAC, those claims are dismissed. To the extent that Plaintiffs have plead violations of the First Amendment as incorporated by the Fourteenth Amendment against the Borough of Lawnside, such as the CD claim and the banner claim, these claims may proceed in accordance with the above analysis. See Phillips v. Borough of Keyport, 107 F.3d 164, 172 (3d Cir. 1997).

**C.    State Law Claims**

Plaintiffs have indicated that they are withdrawing the claims based on the failure of the Lawnside Planning Board ("LPB") to swear in witnesses and to send out notices following the recommendation phase of the redevelopment process. These claims in Count I of the TAC are therefore dismissed.

Defendants argue for the first time in their Reply Brief that they are entitled to summary judgment on Plaintiffs' claims under the Open Public Meetings Act (Count III of the TAC).

Arguments raised for the first time in a reply brief will not be considered.  Bayer AG v. Schein Pharmaceutical, Inc., 129 F. Supp. 2d 705, 715-16,  (D.N.J, 2001) ("The rationale for this rule is self-evident–because the local rules do not permit sur-reply briefs, see L.Civ.R. 7.1(d), a party opposing summary judgment has no opportunity to respond to newly minted arguments contained in reply briefs.")  Defendants' motions on these claims are denied.

Plaintiffs wish to pursue, and Defendants seek summary judgment on, the claims alleging the failure of the LPB and the Council to mail notices to all persons who filed written objections after the Council adopted the Resolution determining and defining the redevelopment area.  Plaintiffs also seek to pursue their claim that a "public hearing", as required by the LHRL, never occurred before the LPB made its recommendation to the Borough Council.  Defendants seek summary judgment on this claim and argue that a public hearing was conducted, following proper notice, on May 9, 2005.  Though this issue was not thoroughly discussed in Defendants' summary judgment and was briefed more substantially in Defendants' reply, Plaintiffs were clearly on notice of the argument, as they discussed it in their Opposition.  (Opp'n at 20.)  The Court reserved ruling on the hearing issue in a previous opinion in this case.  Citizens for a Better Lawnside, 2006 WL 3825145, at *1 n.1.  The issue is now properly before the Court.

1.      Notice Claim

The LHRL provides that "Notice of the determination [that the area is a redevelopment area] shall be served, within 10 days after the determination, upon each person who filed a written objection thereto and stated, in or upon the written submission, an address to which notice of determination may be sent." N.J.S.A. 40A:12A-6(5).  Defendants argue that this provision is primarily a "notice" provision, the purpose of which is to allow objectors to learn

15

about the determination and seek judicial review within the time limitations provided by the statute.

The Court agrees with Defendants' argument. Accepting as true Plaintiffs' contention that no notification was sent to the 165 objectors (TAC ¶ 28), the Court finds that Plaintiffs have suffered no prejudice from this failure. Under both the current Local Housing and Redevelopment Law and its predecessor statute the Blighted Area Act, New Jersey state courts have found harmless the failure to provide post-determination notice where plaintiffs were able to learn about the determination in time file a suit challenging it. See Stahl v. Board of Finance, 163 A.2d 396, 411 (N.J. Super. Ct. Law Div. 1960), aff'd,174 A.2d 238 (N.J. Super. Ct. App. Div. 1961) (finding failure to provide notice harmless where objectors were able to timely file suit); Gober v. City of Ventnor, No. A-2827-02T2 (N.J. Super. Ct. App. Div. May 24, 2004) (per curiam), certif. denied, 868 A.2d 1031 (N.J. 2005). Plaintiffs were able to file a suit in Superior Court and later file this case in District Court within the applicable time limits. Defendants' motion for summary judgment on this claim is granted.

2.      Meeting v. Hearing Claim

If a municipality wishes to determine that an area fits the criteria to be designated a redevelopment area, the LHRL requires the municipality to instruct its planning board to provide "public notice and public hearing" prior to making the determination. N.J.S.A. 40A:12A-6(a). The LHRL also instructs municipalities what they must do to provide "public notice" and conduct a "public hearing." To provide notice, a municipality must: prepare a map showing the boundaries of the proposed redevelopment area and the location of the various parcels of property included therein; attach a statement stating the basis for the investigation into the need

for redevelopment; open the map for inspection by members of the public in the clerk's office; publish a notice for the hearing in a newspaper of general circulation in the municipality once each week for two consecutive weeks, with the last publication not less than ten days prior to the date set for the hearing; and mail notice at least ten days prior to the date set for the hearing to the last owner of each parcel of property within the area and to anyone who might have an interest in the property (according to tax assessment records).  N.J.S.A. 40A:12A-6(b)(1-3).  To conduct a public hearing, a municipality must:  hear all persons who are interested in or would be affected by a determination that the delineated area is a redevelopment area; receive and consider all objections to such a determination and evidence in support of those objections; and make all the objections part of the public record.  N.J.S.A. 40A:12A-6(b)(4).

      The Court has carefully the record and concludes that the LPB did provide proper notice and that the May 9, 2005 meeting constituted a public hearing in accordance with the requirements of the LHRL.  Dawn Wright-McLeod, secretary of the LPB, detailed how the Planning Board provided public notice about the meeting.  (McLeod Aff.)  Ms. Wright-McLeod asked the tax assessor for a list of the owners of property within 200 feet of the proposed redevelopment area, and sent a notice to those individuals about the May 9, 2005 meeting.  The notices advised recipients that a "public hearing" would be held on May 9th, that the recipient's property was within the redevelopment study area, that the initial reports and maps were available for review at the clerk's office and on the borough website, and that any interested party could participate in the hearing.  (McLeod Aff. Ex. B.)  She also sent a notice to the Courier Post, which was published on April 20 and April 27, 2005.  (McLeod Aff. Exs. C, D.)  These actions match the requirements listed in the LHRL, and residents were provided adequate notice for the

May 9, 2005 meeting.

For the first portion of the meeting on May 9, 2005, George Stevenson ("Stevenson"), an engineer from Remington and Vernick Engineers, Inc. ("Remington"), the planning firm hired by the Borough to conduct a preliminary study on the need for redevelopment, presented the study to the LPB and the public. (May 9, 2005 Tr. First Mot. for Summ. J. Ex. G at 8.) At first, the LPB entertained questions only from the board members, but then the LPB opened the floor to questions from the public. (Id.) Various members of the public took the opportunity to ask questions, including Plaintiffs Coltrane (Id. at 50-52), and Elzey (Id. at 106-08). After a five minute recess, the LPB moved for an official finding that there was substantial evidence that the Oak Avenue Area was in need of redevelopment.[4] (Id. at 142-43.) The motion was seconded and passed after a roll call vote. (Id. at 143-44.)

Stevenson then presented the Plan developed by Remington. (Id. at 144-60.) After Stevenson's presentation of the Plan, the LPB asked him questions. (Id. at 160-73.) Then the LPB opened the floor to questions from the public. (Id. at 173.) Again, several members of the public took the opportunity to ask questions, including Plaintiff Coletrane. (Id. at 187-89.) Following this question session, the LPB once again took a five minute recess. (Id. at 227-28.) When they returned from the recess, there were no further questions from the public. After providing board members one more opportunity to ask questions, (id. at 228), the LPB moved,

---

[4]The Board initially framed the motion as "Whether or not there is a need for this Study?" (May 9, 2005 Tr. at 142.) There was a second to that motion as initially worded, and then Stevenson interjected with the suggestion that the movant reword the motion as "Whether or not there Board finds that there is substantial evidence to suggest that the area would be declared to be in need of redevelopment[?]" (Id. at 142-43.) The Board moved and seconded the motion as reworded. (Id. at 143.)

seconded and passed, by a vote of six to one, a motion to approve the Remington redevelopment plan and pass it on to the Mayor and Borough Council (id. at 233). The LPB moved onto other business and then adjourned the meeting. (Id. at 235, 248-49.)

Plaintiffs have provided no evidence that this did not constitute a public hearing within the meaning of the LHRL. The LPB's planner presented information about the criteria for declaring the proposed area a redevelopment area and explained why the area fit those criteria. All interested persons were permitted to speak and ask questions about or comment on the proposed designation. The LPB did interrupt some speakers, particularly during the first part of the hearing, but this was done primarily to keep the proceedings on topic, and the speakers who were interrupted were instructed to raise their questions and comments again during the second portion of the hearing. (E.g., id. at 61-62, 70.)

Though Plaintiffs point to a number of written objections sent to the LPB and Borough Council, they have provided no evidence that any of these objections were sent before the May 9, 2005 meeting. Numerous Plaintiffs did object verbally on May 9th, and those objections are clearly part of the record, but none of the written objections could have been incorporated into the record at the public hearing because they did not yet exist. Written objections were provided before the June 15, 2005 redevelopment determination by the Borough Council, but the statute is directed not at the Council but at the Planning Board. N.J.S.A. 40A:12A-6(b)(4) ("the planning board shall hear all persons [... and] [a]ll objections to such a determination. . . shall be received and considered and made part of the public record"].

It is also true that the LPB voted on the redevelopment determination at the same meeting, immediately following the comments of the public. While this may raise an inference

in Plaintiffs' minds that their comments were not adequately considered, the LRHL does not prohibit a planning board from having one consolidated hearing at which public comment is taken and the vote on the need for redevelopment is taken. The statute provides that the hearing may take place in several parts, but it does not mandate that this occur. N.J.S.A. 40A:12A-6(b)(4) (the hearing "may be adjourned from time to time"). Moreover, the LPB held another meeting on May 31, 2005 for the purpose of adopting the resolutions passed on May 9, and the public was given further opportunity to comment and question the LPB at that time. In short, all the requirements for a public hearing under N.J.S.A. 40A:12A-6(b) were met. Summary judgment on this claim is granted.

## IV.   CONCLUSION

For the reasons expressed above, Defendants' motion for summary judgment on Plaintiffs' First Amendment claims is granted in part and denied in part. Summary judgment is granted on the Bambrilla claim and denied on the CD claim and the banner claim, but Plaintiffs cannot seek damages on the banner claim as a matter of law. Defendants' motion for summary judgment on Plaintiffs' state law claims under the LHRL is granted, and summary judgment on Plaintiffs' claims under the OPMA is denied.


Dated:   12/18/2007                                  /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge